This is a divorce case.
Maurice Mayer and Shirley Woods Mayer married in November 1977. No children were born of the marriage. In October 1991, the husband filed for divorce against the wife, and she counterclaimed. After the exchange of numerous pleadings and an ore tenus proceeding, the trial court divorced the parties in September 1992. The decree ordered a detailed accounting and provided for the division of marital property. Additionally, the decree reserved the issues of alimony, medical insurance, civil service retirement survivor's annuity, tort actions, and attorney fees.
After filing the required accountings and property lists, the wife filed a post-judgment motion, alleging that the trial court failed to consider the deposition testimony of her psychologist, Dr. Lawrence Maier, concerning allegations of physical cruelty and "battered woman's syndrome," and that it erred in its division of property. An amendment to the motion alleged that the trial court also failed to consider or to give sufficient weight to a post-nuptial agreement, allegedly entered into by the parties in January 1990, that was submitted during the hearing. The motion was denied and the wife appealed.
On appeal, the wife contends that the trial court erred by failing to enforce the parties' pre-nuptial and post-nuptial agreements, by failing to award the wife alimony and health insurance, and by ruling from the bench without first reviewing the deposition testimony of the wife's psychologist.
When evidence is presented ore tenus in a divorce case, the judgment of the trial court is presumed to be correct and will not be set aside on appeal absent plain and palpable error. Bailey v. Bailey, 594 So.2d 166 (Ala.Civ.App. 1992). Additionally, matters of alimony and property division are within the sound discretion of the trial court, and absent a showing of abuse of that discretion, the trial court's judgment concerning those matters will not be reversed. Shaver v.Shaver, 611 So.2d 1094 (Ala.Civ.App. 1992); Bailey, supra.
Antenuptial agreements are valid as "just and reasonable" in Alabama as long as certain conditions are met.Barnhill v. Barnhill, 386 So.2d 749, 751 (Ala.Civ.App. 1980). For an antenuptial agreement to be upheld as valid,
 "the one seeking to enforce the agreement has the burden to show that the consideration was adequate and that the entire transaction was fair, just, and equitable from the other party's point of view or that the agreement was freely and voluntarily entered into with competent, independent advice and full knowledge of any interest in the estate and its approximate value."
Mixon v. Mixon, 550 So.2d 999, 1000 (Ala.Civ.App. 1989). Although marriage may be sufficient consideration under the appropriate circumstances, we do not consider it to be sufficient in the instant case. Barnhill, supra; see also,McDonald v. McDonald, 215 Ala. 179, 110 So. 291 (1926).
Although both parties indicate that prior to marriage, they contemplated that, should the marriage fail, each would be entitled to the personal property which each owned prior to the marriage, plus an equal division of the marital property, there is no indication in the record that the marriage was premised on that agreement or that such an agreement was ever reached at that time. Furthermore, the record reveals that the written affirmation of that alleged antenuptial agreement was not put in writing or signed until after twelve years of marriage, fraught with arguments, threats, deceit, depression, and unhappiness, had passed between the parties. The document in question reads:
 "This document is intended to acknowledge and affirm a verbal agreement in effect since November 16, 1977, and to convert it to a written document. Said pre-nuptual [sic] agreement was and remains simply:
 "That any property, real or personal, owned by either party prior to their *Page 746 
marriage shall remain as the sold [sic] property of that individual. This applies to all property, including the home at 413 Cumberland Drive which is the sole property of Shirley W. Woods regardless of the duration of the occupancy or which of the parties sign the check for payments. Furthermore, any monies earned, whether through salaries, commissions, property appreciation, savings, as well as any property accumulated during the marriage will belong to both parties equally."
The record also discloses that the document was signed by both parties on January 4, 1990, following an intense argument between them on New Year's Eve. The husband testified that his signature on the document was an attempt at reconciliation. We are not convinced that the agreement was fair and just from the husband's point of view, nor is there any evidence that the husband freely and voluntarily entered into the agreement with independent legal advice.
The final decree in this case essentially divides all property of the marriage in half, excluding a $40,000 annuity awarded to the wife, that she obtained from the sale of real property prior to this marriage. The primary disagreement relates to the disposition of the marital home located on Cumberland Drive, purchased by the wife prior to the marriage. Testimony revealed that, after the parties married, the husband made the mortgage payments on that home for 12 1/2 years. The wife testified that the husband made the payments out of marital money, but she also stated that the parties had two separate marital accounts from which each functioned separately. Although testimony revealed that the wife paid the utility bills of the home, testimony also disclosed that she was entitled to use rental payments she collected from another parcel of marital real estate for household expenses. Based upon the circumstances surrounding the signing of the agreement and the injustice of its result, the trial court could have decided to disregard the agreement and to treat the Cumberland Drive home as marital property, subject to division accordingly. The trial court ordered:
 "[t]he value of all real property, and certain personal property, owned by the parties consisting of the following:
"(a) 413 Cumberland Drive;
"(b) 1650 Snug Harbor Road;
"(c) 7811 Charlotte Drive;
"(d) 10203 Versailles;
"(e) 2518 Weatherstone;
"(f) Wave Runner;
"(g) Cris Craft boat
 "shall be equally divided between the parties. The parties shall have ninety (90) days from date to divide such property or to sell such property."
It is apparent that the trial court made every attempt to fashion an equitable division of the property. The division of property pursuant to divorce is not required to be equal, but it must be equitable. Wiggins v. Wiggins, 498 So.2d 853
(Ala.Civ.App. 1986).
The testimony presented in this cause is ripe with inconsistencies, and the trial court was in the best position to observe the parties and to make determinations. We are not persuaded that the trial court committed palpable error by dividing the marital property in a manner inconsistent with the provisions of the alleged antenuptial agreement. While we cannot ascertain from the record the reasons that the trial court chose not to accept the parties' agreement, we cannot say that such decision was in error. "[W]here the trial court does not make specific findings of fact, it will be assumed that the trial court made those findings that were necessary to support its judgment, unless the findings would be clearly erroneous." Ex parte Walters, 580 So.2d 1352, 1354 (Ala. 1991). The trial court was within its authority to reject the agreement and to order its own property division.
Additionally, the wife argues that the trial court erred in not enforcing another purported agreement, written and signed on the back of a check, prior to the husband filing for divorce. The agreement allegedly effected a full and final division of all cash monies of the parties. Testimony revealed that the check has not been cashed. *Page 747 
If a trial court considers an agreement made in contemplation of divorce, the trial court is not bound by the agreement and may accept and incorporate such agreement, or reject it in whole or in part. Bass v. Bass, 434 So.2d 280
(Ala.Civ.App. 1983). The trial court in the instant case, after considering all of the evidence relating to the parties' assets, chose to reject the purported agreement and to order division of the funds. We cannot say that the trial court erred in its decision.
The wife also argues that the trial court erred in failing to award her periodic alimony, failing to make a provision for her health insurance coverage, and failing to award her attorney fees.
The trial court's final decree in this case clearly states: "[a]ll other matters, including alimony, medical insurance, civil service retirement survivor's annuity, tort actions and attorneys fees are reserved by the Court."
The wife's issues concerning alimony, attorney fees, and health insurance are not properly on appeal. These issues have not been ruled upon by the trial court.
 "It is a fundamental rule of appellate procedure that, regardless of [the] merits of [an] appellant's contentions, appellate courts will not review questions not decided by the trial court. The Supreme Court cannot put a trial court in error for failure to rule on a matter which, according to the record, was not presented to nor decided by it."
Central Alabama Electric Cooperative v. Tapley, 546 So.2d 371,375 (Ala. 1989). (Citations omitted.)
Although the matters of alimony, attorney fees, and medical insurance coverage were presented to the trial court in the instant case, the trial court expressly reserved decision on these matters and had not ruled upon those matters at the time of appeal. Accordingly, there is nothing for this court to review.
Last, the wife unpersuasively argues, without any supporting authority, that the trial court erred by ruling from the bench without reviewing the deposition testimony of Dr. Maier.
The record reveals that at the close of the ore tenus proceedings, the trial court gave instructions to the parties regarding the return of marital property and it stated that it would issue an order dividing the property. Additionally, the trial court expounded, "[t]here are other numerous issues in this case that is going to require me to look through these documents and examine all of this evidence that has been presented to me. That is going to take some period of time." The transcript reveals that these statements by the trial court were made immediately after the in-court introduction of the videotape and deposition by the wife's attorney.
The wife claims that had the trial court considered the deposition of Dr. Maier, a different decision would have resulted. There is simply nothing in the record to indicate that the trial court failed to consider the deposition, and, on the contrary, the deposition was available for the trial court's consideration, along with the remainder of the record.
Based upon the foregoing, we affirm the trial court's decision. Both parties' requests for attorney fees on appeal are denied.
AFFIRMED.
ROBERTSON, P.J., and YATES, J., concur.